**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

THE UNITED STATES OF AMERICA *ex rel.* ANIMAL LEGAL DEFENSE FUND,

Plaintiff-Relator,

-v-

HOLDEN FARMS, INC.,

Defendant.

Case No. 21-cv-02061 JRT/DJF

**MEMORANDUM OF LAW IN SUPPORT OF HOLDEN FARMS' MOTION FOR ATTORNEYS' FEES**

---

Defendant Holden Farms, Inc. ("Holden Farms") submits this memorandum of law in support of its motion for an award of attorneys' fees pursuant to 31 U.S.C. § 3730(d)(4).

## BACKGROUND

Relator Animal Legal Defense Fund ("Relator") commenced this action under the False Claims Act, 31 U.S.C. §§ 3729-3733. (*See generally* First Amended Compl. (Doc. 30).) Relator claimed that the illicit video recorded at one farm, during a four-month period that ended before Holden Farms applied for a loan under the Paycheck Protection Program, showed violations of state and federal laws and that Holden Farms therefore violated a general certification in its PPP loan application that it "is not engaged in any activity that is illegal under federal, state or local law." (*See id.*, at ¶ 7.) The United States Department of Justice

declined to pursue these claims, and the case was unsealed on August 7, 2023. (See Order (Doc. 23); Notice to Unseal Case (Doc. 24).)

On September 15, 2023, Holden Farms moved to dismiss Relator's First Amended Complaint. (*See generally* Holden Farms' Mot. To Dismiss First Amended Compl. (Doc. 46).) Among other deficiencies, Holden Farms pointed to Relator's failure to allege materiality under the standard set forth in *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016).

Holden Farms' motion to dismiss was originally scheduled to be heard on March 29, 2024 (*see* Am. Not. of Hearing (Doc. 62)), but the Court cancelled the hearing on March 28, 2024, and instead decided to resolve the motion on the written briefs (*see* Notice of Cancellation of Hearing (Doc. 63) and Notice to Attorney (Doc. 64)). On May 28, 2024, the Court issued its Memorandum and Order Granting Defendant's Motion to Dismiss (Doc. 65) (the "Order), determining that "[t]he alleged false statement was not material; thus, no FCA liability follows." (Order at 6.) The Court summarized *Escobar* and applied its holding to the present case:

> Under *Escobar*, then, Holden is not liable under the FCA simply by virtue of its attestation that it complied with all laws. ALDF brings precisely the action the Supreme Court warned against, using an all-encompassing certification of legality to ensnare Holden in FCA liability. Thus, the Court will proceed with skepticism while still evaluating whether, under the totality of the circumstances, Holden's noncompliance was material.

(*Id*. at 7.)

From this starting point, the Court analyzed the two key factors of materiality that Relator's Complaint relied on. First, regarding whether the alleged false statement went "to the very essence of the bargain," the Court determined that "the violation alleged here was entirely unrelated" to the purpose of the PPP. (Order at 8.) Second, regarding the government's response to false statements similar to those alleged, the Court stated that it was "inconceivable" that the government would find that the broad certifications contained in loan applications were material, and that it was "even less conceivable" in the context of the Paycheck Protection Program's expedited process. (*Id*. at 11-12.) Because "both the general tenor of this action and the totality of the circumstances indicate the alleged false claim was not material to the government's PPP decisions," the Court dismissed the action with prejudice. (*Id*. at 13.)

Pursuant to the Court's Order, judgment was entered on May 29, 2024. (*See* Judgment (Doc. 66).) Pursuant to 31 U.S.C. § 3730(d)(4) and Rule 54(d) of the Federal Rules of Civil Procedure, Holden Farms brings this motion for attorneys' fees and expenses.

**ARGUMENT**

Under the FCA, in cases where the government declines to intervene in the action, the defendant may recover "its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person

bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). Relator's FCA claim was contrary to clear Supreme Court precedent and brought solely to drum up publicity and funding for Relator's radical campaign against animal agriculture. Holden Farms respectfully requests an award for its reasonable attorneys' fees and expenses in defending against Relator's FCA claim because it was clearly frivolous, clearly vexatious, and brought primarily to harass Holden Farms.

## I. Holden Farms is Entitled to Recover Its Reasonable Attorneys' Fees Incurred in Defending Against Relator's Clearly Frivolous Lawsuit.

Statutory attorneys' fee provisions operate "to relieve defendants of the burdens associated with fending off frivolous litigation." *Fox v. Vice*, 563 U.S. 826, 836 (2011) (interpreting 42 U.S.C. § 1988). Relator's FCA claims contradicted clear Supreme Court precedent and Relator offered no conceivable argument as to why its case was distinguishable. Therefore, Holden Farms asks the Court to relieve it of the legal expenses it incurred because of Relator's frivolous claims.

### A. A claim is "clearly frivolous" if it lacks any arguable basis in law.

In determining whether to award a prevailing defendant attorneys' fees for under the FCA, courts look to the standards applied under 42 U.S.C. § 1988. *U.S. ex rel. Onnen v. Sioux Falls Ind. School Dist. No. 49-5*, 688 F.3d 410, 415 (8th Cir. 2012). Under section 1988, a prevailing defendant may recover attorneys' fees if the plaintiff's claim was "frivolous, unreasonable, or groundless, or that the plaintiff

continued to litigate after it clearly became so." *Williams v. City of Carl Junction, Mo.*, 523 F.3d 841, 843 (8th Cir. 2008) (internal quotation marks and citation omitted).

A complaint is not frivolous just because the plaintiff did not ultimately prevail. *Bass v. Sw. Bell Tel., Inc.*, 817 F.2d 44, 47 (8th Cir. 1987). A frivolous claim is one that "lacks an arguable basis in law or fact." *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). A claim "lacks an arguable basis in law" if it "is based on an indisputably meritless legal theory." *Id.*

In *Spectra Communications Group, LLC v. City of Cameron, Mo.*, 806 F.3d 1113, 1123 (8th Cir. 2015), the court affirmed the denial of a defendant's request for attorneys' fees because the dispositive legal issue "was unresolved in [the Eighth Circuit], and the other circuit courts are divided on that issue, and the parties presented 'reasonable arguments on both sides.'" (quoting *Eisenrich v. Minneapolis Retail Meat Cutters and Food Handlers Pension Plan*, 574 F.3d 644, 651 (8th Cir. 2009)).

Meanwhile, a plaintiff's claim is frivolous if it is contrary to clear precedent. *See, e.g., Nguyen v. Foley*, No. 21-cv-991 (ECT/TNL), 2022 WL 1026477, at *2 (D. Minn. Apr. 6, 2022) (finding a § 1983 claim to be frivolous because it failed to meet the state-actor element under "black letter" law); *Parson v. Barney*, No. 12-cv-0646 (DWF/DJF), 2023 WL 5447287, at *4 (D. Minn. Aug. 24, 2023) (because it is "well established that a plaintiff generally cannot assert claims directly under the

Constitution," such claims are "legally frivolous"), *report and recommendation adopted*, 2023 WL 6387869 (D. Minn. Sept. 29, 2023).

### B. Relator's claims were frivolous because Relator's materiality theory was expressly rejected by the Supreme Court in *Escobar*.

"To bring a claim under the [False Claims Act], the relator must show that (1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *United States ex rel. Thayer v. Planned Parenthood of the Heartland*, 11 F.4th 934, 938 (8th Cir. 2021) (internal quotation marks omitted). This Court dismissed Relator's FCA action because Relator "[did] not allege that Holden violated a material term of its PPP loan agreement." (Order at 13.) Because Relator's only allegations regarding materiality were indisputably meritless under *Escobar*, Relator's claim was frivolous.

In *Escobar*, the Supreme Court rejected the federal government's argument "that any statutory, regulatory, or contractual violation is material so long as the defendant knows that the Government would be entitled to refuse payment were it aware of the violation," and specifically envisioned the types of claims that would be brought under this standard:

> Likewise, if the Government required contractors to aver their compliance with the entire U.S. Code and Code of Federal Regulations, then under this view, failing to mention noncompliance with any of those requirements would always be material. The False

> Claims Act does not adopt such an extraordinary expansive view of liability.

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195-96 (2016).

Instead, the Supreme Court cautioned that the FCA "is not an all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 579 U.S. at 194 (internal quotation marks and citation omitted). The materiality requirement is both "demanding" and "rigorous," and FCA plaintiffs must plead materiality with particularity under Federal Rule of Civil Procedure 9(b). *Id*. at 195 n. 6.

As this Court concluded in its Order, Relator's complaint was "precisely the action the Supreme Court warned against, using an all-encompassing certification of legality to ensnare Holden in FCA liability." (Order at 7.) Relator's FCA claims centered solely on Holden Farms' certification in its PPP loan application "that it was in compliance with all federal, state, and local laws." (First Amended Compl. (Doc. 30), at ¶¶ 158, 167.) This Court disposed of Relator's claim based on the Complaints' blatant ignorance of the *Escobar* materiality standard, which Relator had no conceivable explanation for. Under these circumstances, Relator's FCA claim was clearly frivolous, and Holden Farms is entitled to recover its reasonable attorneys' fees and expenses.

## II. Relator's Claims Were Brought Primarily to Harass Holden Farms.

Originally enacted to "stop[] the massive frauds perpetrated by large contractors during the Civil War," the FCA is designed as a punitive statute aimed at "those who present or induce the submission of false or federal claims." *Escobar*, 579 U.S. at 181-82. In an effort to prevent this statute from morphing into a weapon to be wielded by private parties for other purposes, the FCA also allows a prevailing defendant to recover attorneys' fees if the relator's claim was "brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4).

From the face of Relator's Complaint, it is clear that Relator was not concerned with any fraud perpetrated on the federal government, nor the financial recovery it may be entitled to as a *qui tam* party. Relator's primary goal in this lawsuit was to publicly ostracize Holden Farms, garner support for federal legislation furthering Relator's radical campaign against animal agriculture, and raise funds from its donors.

First, Relator conspired with Animal Outlook (another extremist animal rights organization) to target Holden Farms using an undercover agent to gain employment from Holden Farms under false pretexts and "work" in the farm for approximately five months. (Compl., at ¶ 88.) The investigator was inserted into Holden Farms' operations to search for and document alleged violations of state and federal law in violation of Holden Farms' policies. (*Id.*) Rather than reporting

its concerns to Holden Farms so that any legitimate animal welfare issues could be promptly addressed, as required by Holden Farms' policies, Relator instead transmitted the purported evidence it held to local, state, and federal law enforcement, all of which declined to take action against Holden Farms.

Second, after filing its Complaint under seal, Relator coordinated a national media campaign to create publicity for its FCA action against Holden Farms. Reporters began contacting Holden Farms asking it to comment on the undercover investigation and the allegations that ALDF and Animal Outlook were making, despite the Complaint and undercover video not yet being published. (Decl. of Blake Holden in Supp. of Holden Farms' Mot. for Attorneys' Fees, at ¶¶ 2-3.) These reporters published articles in the days leading up to, and immediately after, the Complaint was unsealed on August 7, 2023.[1]

Third, after the Complaint was unsealed and media outlets aired Relator's narrative, Relator disseminated the Complaint and stories to its supporters to elicit donations and political support. Relator and Animal Outlook went as far as creating a website entitled "holdenharms.org," where it published a collection of

[1] *See* Nicholas Kristof, *The Truth About Your Bacon*, New York Times, Aug. 5, 2023, https://www.nytimes.com/2023/08/05/opinion/hog-farming-secret-video.html.; Kenny Torrella, *A new investigation exposes the stomach-churning practice that goes into making your bacon*, Vox, Aug. 14, 2023, https://www.vox.com/future-perfect/23817808/pig-farm-investigation-feedback-immunity-feces-intestines.

Relator's press releases and a recitation of the unproven allegations asserted in Relator's complaint. *See Holden Farms: Investigation & Federal Lawsuit*, https://holdenharms.org/ (last accessed June 7, 2024). In two different places on Relator's webpage dedicated to this lawsuit, Relator brandishes the following banner with a link to sign a petition "demanding Congress address the unacceptable industrywide animal cruelty and human health risk routinely occurring in U.S. facilities such as Holden Farms":




Animal Legal Defense Fund, *Challenging Holden Farms Cruelty and Garbage Feeding Via False Claims Lawsuit*, https://aldf.org/case/holden-farms-false-claims-lawsuit/ (last accessed June 7, 2024); *Hold factory farms accountable for abusing animals*, https://aldf.org/article/hold-factory-farms-accountable-for-abusing-animals/ (last accessed June 7, 2024).

With full knowledge that its FCA claims had no legal basis in the face of clear Supreme Court precedent, and with local, state, and federal law enforcement all refusing to act upon the violations Relator claimed to document, Relator nonetheless filed its Complaint against Holden Farms. Based on Relator's

concerted efforts to publicize this action and paint Holden Farms as the poster child for an industry that Relator has an organizational vendetta against, it is clear that this action was never about the merits to Relator. Because Relator asserted its frivolous FCA claims to harass Holden Farms, manufacture public outcry, and garner financial and political support for Relator's campaign, Holden Farms asks the Court for an award of Holden Farms' reasonable attorneys' fees and expenses incurred in defending against Relator's claims.

## III. <u>Because Such Fees Were Reasonable and Necessarily Incurred, the Court Should Grant the Full Amount of Attorneys' Fees Paid by Holden Farms.</u>

The Court has discretion in determining the reasonable amount of attorneys' fees to award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The amount should be determined according to the lodestar method, "which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) (citation omitted).

### A. The Time Spent Obtaining Dismissal of Relator's Claims Was Reasonable.

Holden Farms seeks an attorneys' fee award of $39,501.25. (*See* Decl. of Matthew C. Berger in Support of Motion for Attorneys' Fees ("Berger Decl."), Ex. A.) This represents 64.25 hours of services provided by attorneys and 43 hours of services provided by a law clerk and a paralegal. (*Id.*) From August 10, 2023, through September 15, 2023, Holden Farms' attorneys and their staff spent 62

hours reviewing Relator's Complaint, analyzing Relator's claims, and drafting and filing Holden Farms' Motion to Dismiss. (*Id.*) From October 3, 2023 through November 3, 2023, Holden Farms' attorneys and their staff spent 34.75 hours reviewing Relator's memorandum in opposition to Holden Farms' motion and preparing Holden Farms' reply memorandum. (*Id.*) From January 12, 2024 through March 28, 2024, Holden Farms' attorneys and their staff spent 10.5 hours preparing for the hearing on Holden Farms' Motion to Dismiss. (*Id.*)[2]

The Declaration of Matthew C. Berger filed in support of this motion contains detailed descriptions of all of the work performed for Holden Farms in defending against Relator's claims. (Berger Decl., Ex. A.) This work was actually performed for the benefit of Holden Farms and was necessary for the proper representation of Holden Farms in this action. (*Id.*, ¶ 10.) Any unnecessary or duplicative work was not charged to Holden Farms. (*Id.*) Because the hours charged to Holden Farms were "reasonably expended," Holden Farms asks the Court to include the full amount of hours in its attorneys' fee award. *Hensley*, 461 U.S. at 434.

[2] The hearing on Holden Farms' Motion to Dismiss was originally scheduled for March 29, 2024. (*See* Amended Notice of Hearing on Holden Farms' Motion to Dismiss First Amended Complaint (Doc. 62).) The hearing was cancelled by the Court on March 28, 2024. (*See* Notice of Cancellation of Hearing (Doc. 63).) As such, the attorneys' preparation for the scheduled hearing was necessary until notice of cancellation was provided to Holden Farms.

**B. The Rates Charged by Holden Farms' Attorneys Were Reasonable.**

In determining whether an attorney's hourly rate is reasonable, the court may consider the prevailing community rate for similar work, the skill of representation, the difficulty of the work performed, counsel's experience, and counsel's reputation. *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (citing *Blum v. Stenson*, 465 U.S. 886, 895 & n. 11 (1984)).

Gislason & Hunter's rates are reasonable considering the skill, experience, and reputation of each attorney and legal staff member that provided services to Holden Farms. Matthew Berger, Dustan Cross, and Dean Zimmerli are attorneys with 16, 29, and 9 years of experience, respectively. (Berger Decl., ¶¶ 1, 3-4.) The hourly rates charged by Gislason & Hunter for attorneys, including associates, to Holden Farms in this matter ranged from $350 to $485 per hour. (*Id.*, ¶¶ 2-6.) These rates are consistent with the prevailing community rates for attorneys of similar experience, and are well within the thresholds that this district has found reasonable in other cases. *See, e.g., Nguyen v. Foley*, No. 21-cv-991 (ECT/TNL), 2022 WL 1026477, at *4 (D. Minn. Apr. 6, 2022) (determining that rates ranging from $435 to $885 per hour were reasonable); *Iceotope Group Ltd. v. LiquidCool Solutions, Inc.*, No. 20-cv-2644 (WMW/JFD), 2023 WL 2014785, at *3 (D. Minn. Feb. 15, 2023) (rates ranging from $360 to $685 per hour were reasonable).

The attorneys' fees Holden Farm incurred defending Relator's FCA claims were reasonable in both time and rate. Relator's Complaint sought $7.8 million in statutory penalties and treble damages. (First Amended Compl. (Doc. 30), ¶ 31.) Considering the significant financial liability at stake, the attorneys' fees incurred in obtaining dismissal of Relator's frivolous claims were reasonable. Thus, Holden Farms respectfully requests that the Court award Holden Farms its attorneys' fees, which presently total $39,501.25.[3]

**CONCLUSION**

Relator's FCA claims lacked any arguable basis and law and were brought primarily to harass and fabricate public outcry against Holden Farms. As such, Holden Farms respectfully requests that the Court award its reasonable attorneys' fees incurred in obtaining dismissal of Relator's claims.

**[SIGNATURE ON FOLLOWING PAGE]**

[3] Holden Farms will supplement its fee request with unbilled time associated with preparing the present motion once such amounts are invoiced to Holden Farms. *See E-Tabech v. Clarke*, 616 F.3d 834, 843 (8th Cir. 2010) ("Time spent preparing fee applications is generally compensable . . .); *Hall v. Sebelius*, No. 13-295 (JRT/LIB), 2016 WL 424965, at *7 (D. Minn. Feb. 3, 2016) (awarding $9,750 in fees incurred preparing the motion for attorneys' fees).

Dated: June 12, 2024

/s/ Matthew C. Berger

Dustan J. Cross (#248952)
dcross@gislason.com
Matthew C. Berger (#0387666)
mberger@gislason.com
Jacob J. Brekke (#0504544)
jbrekke@gislason.com
GISLASON & HUNTER LLP
2700 South Broadway
P.O. Box 458
New Ulm, MN 56073-0458
Phone: (507) 354-3111
Fax: (507) 354-8447

***Attorneys for Defendant***
***Holden Farms, Inc.***